

**NISAR LAW GROUP, P.C.**
One Grand Central Place
60 East 42nd Street, Suite 4600
New York, NY 10165

Susan Ghim, Of Counsel
sghim@nisarlaw.com
Main: (212) 600-9534
Direct: (646) 889-1011

November 2, 2023

<u>VIA ECF</u>:
Hon. Peggy Kuo
Magistrate Judge
United States District Court, EDNY
225 Cadman Plaza East
Brooklyn, NY 11201

Re:   <u>Haase-Parrott v. Elite Care LLC et al., 23cv2515</u>
       Parties' motion for approval of settlement agreement

Dear Judge Kuo:

     As the Court is aware, the undersigned represents the Plaintiff Shaqueen Haase Parrott in the above referenced matter.  The Court approved the parties' consent to your Honor's jurisdiction over the above referenced matter on or about October 31, 2023.  [ECF doc. 12]  Pursuant to the Court's docket text order dated on or about September 1, 2023, Counsel for the parties jointly request that this Court approve the parties' settlement agreement pursuant to *Cheeks v. Freeport Pancake House*, Inc*.*, 796 F.3d 199 (2d Cir. 2015)  Pursuant to the Court's docket text order dated on or about September 27, 2023, the court granted an extension of the deadline to submit the parties' settlement agreement ("Agreement") and the instant letter motion to on or about November 2, 2023. The parties' Agreement settled all of Plaintiff's claims asserted in the Complaint, filed on or about March 31, 2023, including claims brought pursuant to  the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and New York Labor Law ("NYLL") §190 et seq. and New York City Administrative Code. (ECF No.--)  Attached as **Exhibit A** is a true and correct copy of the Parties' fully executed Agreement.  The fully executed copies of the Confessions of Judgment by Defendants have been provided to the undersigned to be held in escrow.

I.   **<u>Claims and Defenses</u>**

     Shaqueen Haase Parrott ("Plaintiff"), worked for Elite Care LLC during the time period July 2020 to date with the title of "companion" with alleged duties of a home care aid ("HCA") within the meaning of the Public Health Law§3614-f ("PHL").   Plaintiff commenced this matter with the filing of a complaint on or about March 31, 2023 against her former employer Elite Care LLC and owner Eli Kohn alleging her misclassification as an independent contractor and violations of minimum and overtime wage provisions under the FLSA 29 USC §201 et seq. ,

NYLL §651 et seq. and Rules and Regulations Title 12 NYCRR 142-2.2, and NYS DOL's wage order for home care aids as defined in Public Health Law §3614-f ("PHL").  The NYS DOL's wage order for home care aids were effective as of on or about 12/31/2021.  Plaintiff further alleged Defendants failed to pay spread of hours pay for her workdays that she worked more than 10 hours from beginning to end including any break periods pursuant to NYLL 12 NYCRR §142-2.4   Plaintiff also alleged that Defendants failed to provide her with proper and accurate wage statements and wage notice in violation of NYLL §195(1) and (3) and failed to pay Plaintiff her accrued and unused sick hours pursuant to NYC Sick Leave Law.  Defendants vigorously denied all of Plaintiff's claims.

Plaintiff alleged that she was hired as a Home Care Aid ("HCA") during the relevant time period on or about July 2020 to date.  Plaintiff was paid approximately $12 per hour during the relevant time period .  During the relevant time period the minimum wage rate for NYC employees in miscellaneous industries was $15 per hour.  Effective on or about 10/1/2022, the minimum wage rate for HCAs was $17 per hour.  The concurrent overtime wage rates were $22.50 and $25.20 respectively.  Plaintiff alleged she was not an independent contractor as she reported to the owner Eli Kohn who set her work hours for manual duties as a HCA and Plaintiff neither had no authority to hire, fire, set wages, set schedules or control any other terms and conditions of employment for herself or any other employees.  Plaintiff alleged she reported for work at the facilities where the clients required health aid, e.g. assistance with daily living including but not limited to dressing, eating meals, personal hygiene, and going to medical appointments.  Plaintiff alleged that during the relevant time period when Plaintiff reported for work, she relieved the HCA working on a prior shift and was relieved by another HCA working on a successive shift. Accordingly, Plaintiff alleged that he was at all relevant times a non-exempt employee.  Defendants denied all of these allegations, including this alleged non-exempt status.

Plaintiff alleged that she was regularly worked 48 hours per week, 12 hours per day, 4 days per workweek.  Defendants denied these allegations as to Plaintiff's alleged hours of work.

Plaintiff alleged that throughout her employment with Defendants, she was not paid the applicable overtime pay for the hours she alleged she worked in excess of forty (40) hours per week. Plaintiff also alleged that she was not provided with proper and accurate payroll notices or wage statements as required under NYLL §§ 195(1) and (3).  Defendants denied these allegations.

Plaintiff estimated that her underpayments minimum and overtime damages amount to be approximately $53,160 after crediting wages paid by Defendants; and her total unpaid spread of hours pay at $8,520; and wage notice  and wage statement penalties in the maximum total amount of $10,000.00.   Accrued and unused sick hours pay was calculated at 80 hours (1 hour for each week worked over 30 hours in a workweek) times the applicable minimum wage rate for a total of $2,130. The total alleged damages were approximately $73,810.00.  Attached as **Exhibit B** is a true and accurate copy of Plaintiff's good faith damages calculation based upon Plaintiff's recollection and Defendants' documents produced in this case listing weekly hours and weekly paycheck amounts.

Defendants disputed Plaintiff's alleged title, non-exempt status and the wage rates that Plaintiff alleged to be owed and therefore contend that Plaintiff was paid properly throughout her work period.

II. **Settlement**

By and through their respective counsel, the parties agreed to the settlement amount of $35,000 which included attorneys fees and costs to reach an amicable resolution of this matter without further litigation. As further detailed below, the parties respectfully submit that the proposed settlement agreement is fair, reasonable, and equitable.

1. The settlement amount is fair and reasonable

Courts in this circuit look at the totality of circumstances when deciding whether a FLSA settlement is fair and reasonable. The factors may include: "(1) the plaintiff's range of possible *recovery*; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *See, Aly v Dr. Pepper Snapple Grp., Inc.,* 2019 US Dist. LEXIS 100256 at *5; 2019 WL 3388947 (EDNY, 2019) citing *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (SDNY 2012)

The parties' proposed settlement agreement warrants approval as fair and reasonable as it reflects a reasonable compromise of Plaintiff's FLSA, NYLL and local claims rather than a mere waiver of statutory rights brought about by Defendants' overreaching. Plaintiff's net settlement amount of $22,647.00 after expenses and proposed attorneys' fees ($11,550) and costs ($803)[1] of $12,353.00 was fair and reasonable given the early stage at which the settlement was reached; the time and costs associated with continued ligation; the risk that Plaintiff would not prevail on all of her claims after a trial; and the risk that Plaintiff would not be able to collect on a judgment even if Plaintiff prevailed at trial. Importantly, Plaintiff would obtain a significant monetary amount of approximately 31% of her total damages of approximately $73,810 more immediately than if she spent years litigating her claims. [Ex. B, Est. Damages] *See, Aly v Dr. Pepper Snapple Grp., Inc.,* 2019 US Dist. LEXIS 100256 at *6; 2019 WL 3388947 (EDNY, 2019) (The *Aly* Court determined that a 20% recovery was fair and reasonable based on the Plaintiff's "potential obstacles to any recovery." ) Moreover, based on the maximum amount of potential recovery of $73,810, continuing with expensive discovery to develop the record would serve to unnecessarily enlarge costs on both sides and only compromise Plaintiff's net recovery. *See, Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d at 335-36.

There was no collusion or coercion of any party to reach the instant settlement. The parties' settlement was reached through negotiation between counsel for the parties following extensive and contentious settlement discussions. Plaintiff and Defendants hold opposing views on the merit and value of Plaintiff's claims and the strength of Defendants' defenses. The arm's length bargaining between the represented parties, along with the information shared prior to and during settlement negotiations, weighs in favor of finding the settlement reasonable. Through candid discussions between counsel, the parties were able to assess the strengths and weaknesses of the asserted claims and their respective positions. *See, e.g.*, *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) ("In considering whether a settlement is fair and reasonable,

---

[1] Plaintiff's costs and expenses are as follows: $402.00 for the initial court filing fee; and $401.00 for service of process fees.

3

the principal question is whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching'") (citation and internal quotation marks omitted); *See also, Aponte v. Comprehensive Health Mgmt., Inc.,* 2013 U.S. Dist. LEXIS 47637, at *12 (S.D.N.Y. Apr. 2, 2013) (courts typically "regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement") (citation and internal quotation marks omitted).   If litigation continued and the Plaintiff did not pass the work duties test to qualify for non-exempt employee status or there was an exempt status for HCAs prior to 12/31/2021, it posed a significant risk or an obstacle to recovery for the Plaintiff.  If the Court ruled that Plaintiff was an exempt employee or an independent contractor, Plaintiff would not be able to recover overtime wages, spread of hours pay, and accrued and unused sick pay as they all hinge on a finding of non-exempt employee status. There was no "mere waiver of statutory rights" by Plaintiff as the release only released wage and hour claims alleged in this lawsuit to ensure that Plaintiff retained her statutory rights under state, federal and local labor laws.

Plaintiffs' negotiated release and waiver of claims was sufficiently limited to any and all wage-related claims she brought or could have brought to date. *See Souza v. 65 St. Marks Bistro*, No. 15-CV-327, 2015 U.S. Dist. LEXIS 151144, *12-13 (S.D.N.Y. Nov. 6, 2015) (providing a discussion relating to the approval of releases limited to wage-related claims).
The parties further negotiated a non-disparagement provision that should be acceptable to the Court because it contained an exception for truthful statements.  *See, Quic v. Uncle Mario's Brick over Pizza LLC* 2021 US Dist LEXIS 194502 at *5-6 (SDNY, October 7, 2021)  The exception contained in the parties non-disparagement clause stated in relevant part, "Notwithstanding the foregoing, this non-disparagement provision does not preclude any Party from making factual or truthful statements about this matter and the terms and conditions of employment of Plaintiff."


2.  Plaintiff's attorney fees are reasonable

The proposed amount of attorneys' fees was fair and reasonable as Plaintiff's counsel did not benefit at the expense of Plaintiff and Plaintiff's contingency agreement with her counsel was for 1/3 of the amount recovered through settlement or final judgment.  The attorneys fees amount of $11,550.00 should be approved, as "[a]n award of one third of the fund which is consistent with what reasonable, paying clients pay in contingency employment cases." *See, Flores v. Anjost Corp.,* 2014 U.S. Dist. LEXIS 11026, at *25 (S.D.N.Y. Jan. 28, 2014) The proposed fee award of one-third in this case should be approved because it was consensual and agreed to by Plaintiff. *See Mireku v. Red Vision Sys., Inc.,* 2013 U.S. Dist. LEXIS 172102 (S.D.N.Y. Dec. 6, 2013) (approving settlement and noting the consensual nature of the fee arrangement)   Under the settlement agreement, Plaintiff's counsel would also recover an additional $803 as reimbursement for costs and expenses[2].  *See, Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207, at *4 (E.D.N.Y. Sept. 19, 2013) ("Pursuant to plaintiff's retainer agreement with counsel, the fee is one-third of the settlement amount, plus costs. This fee arrangement is routinely approved by courts in this Circuit.").

---

[2] Plaintiff's costs and expenses are as follows: $402.00 for the initial filing fee; and $401.00 for service of process fees.

4

Undersigned counsel for Plaintiff has spent a total of 45.6 hours on this matter to date totaling approximately $ 18,240.00 ( 45.6 hours x $400 per hour). Undersigned counsel's hourly rate of $400 was reasonable based on Plaintiff's counsel's experience and is in line with the rates charged by attorneys in this district. Undersigned counsel for Plaintiff has approximately twenty years of litigation experience in state and federal courts in the New York City ("NYC") area on labor and employment matters including wage and hour defense and prosecution. For approximately four (4) years, the undersigned counsel was an associate of a law firm that practiced primarily in union side labor law and the remaining experience was obtained as a solo practitioner and wage and hour litigation consultant or of counsel to other NYC law firms. The undersigned has successfully procured dozens of settlement agreements for clients who were all satisfied with those outcomes. Based on the number of years of practice and the complexity of issues involved in this case, the undersigned counsel's fee of $400 per hour was reasonable. *See, Hernandez v. El Azteca*, 2021 US Dist LEXIS 236056 at *6 (SDNY, December 9, 2021)(This Court found the rate of $400 per hour for an associate at a small firm in this district and $450 per hour for a managing partner was reasonable)

Attached as **Exhibit C** is a true and correct copy of the hours worked by undersigned counsel on this matter. As detailed *supra*, the total approximate hours of 45.6 hours worked by Plaintiff's counsel resulted in a total lodestar amount of approximately $18,240.00. The total lodestar fees exceeded the settled 1/3 attorneys fee amount of $11,550 and was therefore reasonable in that Plaintiff's counsel did not benefit at the expense of the Plaintiff. *See Wolinsky*, 900 F. Supp. 2d at 336-37; *Cisek v Natl. Surface Cleaning, Inc.*, 954 F. Supp. 110, 111 (S.D.N.Y. 1997) (finding that the sum sought by plaintiffs' counsel was reasonable, the settlement was untainted by conflict of interest and there was "no reason to conclude that plaintiffs' counsel benefited at the expense of their clients"). Accordingly, the attorneys fees awarded in this settlement was reasonable.

The parties respectfully request judicial approval of the parties' proposed settlement agreement, and further request permission to submit a stipulation of dismissal with prejudice pursuant to Fed. R. Civ. P. 41(1)(a)(ii).

Respectfully submitted,

/s/ Susan Ghim

_____
Susan Ghim, Of Counsel

Via ECF to:
Daniel Feldman, Esq.
The Zweig Law Firm P.C.,
483 Chestnut Street
Cedarhurst, NY 11516
Ph. 718.971.9716 Ext. 3
DFeldman@ZweigPC.com